(No. 52772.-

JIM SEIBER, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Ralph Schuyler Jones, Appellee).

*Opinion filed September 29, 1980.*

GOLDENHERSH, C.J., took no part.

William C. Evers III, of Collinsville, for appellant.

Michael A. Katz, of Collinsville, for appellee.


MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

In proceedings under the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*), an arbitrator for the Industrial Commission found that claimant, Ralph Schuyler Jones, had failed to prove that he sustained accidental injuries arising out of and in the course of his employment with respondent, Jim Seiber, doing business as Seiber Sanitation and Hauling, and the arbitrator denied the claim for compensation. On review, the Commission set aside the decision of the arbitrator and awarded claimant compensation of $100.90 per week for a period of 5 6/7 weeks for temporary total disability and $4,069.25 for reasonable medical expenses incurred.

On *certiorari,* the circuit court of Madison County confirmed the decision of the Industrial Commission. Respondent appealed to this court pursuant to Rule 302(a) (73 Ill. 2d R. 302(a)). Respondent argues that the decision of the Industrial Commission is against the manifest weight of the evidence.

In the proceedings before the arbitrator, claimant testified that on May 22, 1976, he was employed by respondent as a helper on respondent's sanitation truck. His responsibilities as a helper included lifting 20-gallon cans of trash and emptying them into respondent's truck. At approximately 8 or 9 a.m. on that day, while lifting a 20-gallon can of trash, claimant felt a sharp pain in his back. During the day this pain progressively increased, and claimant eventually left his job to seek medical attention. He did not state the approximate time that he left. Prior to leaving, claimant asked the driver of the truck to inform respondent that he had left work to consult a physician. Several days later he was hospitalized at St. Elizabeth's Hospital in Belleville. He remained in the hospital for approximately one week and was discharged in an improved condition. He subsequently returned to the hospital with complaints of pain in his lower back and was readmitted for a period of approximately three weeks. The records of treatment introduced by claimant indicate that he was first hospitalized from May 28 through June 6, 1976. His second hospitalization began on June 7 and continued through July 2, 1976. Claimant admitted that he did not discuss his alleged accidental injury with respondent. He stated, however, that a friend named Roy spoke to respondent concerning payment of his medical expenses immediately following his first hospitalization. Claimant stated that he had not worked since May 22, 1976, that he was currently enrolled in a State employment rehabilitation program, and that he continued unable to lift heavy objects. He elaborated that the extent of his

lifting activity has been limited to carrying "a sack of rabbit feed." He stated that he did not return to his position at Seiber Sanitation and Hauling because he preferred not to continue working for respondent.

On cross-examination, he stated that he was collecting refuse in the vicinity of Hollywood Heights Road when he first noticed pain in his back. He could not remember the name of the driver of the truck. He did, however, identify an individual sitting in the hearing room as the driver on this occasion. This individual later testified and identified himself as James Hubbard. Claimant reiterated that he had informed Hubbard of his condition and had requested that Hubbard inform respondent that he was leaving work to consult a physician. Prior to leaving work, claimant spoke to both respondent and his wife. He believed that he had informed Mrs. Seiber that his back was injured, but he did not discuss the circumstances of the alleged injury. He did not discuss this matter with respondent. When he returned home on May 22, 1976, his family physician was notified, and claimant was subsequently examined by him. The date of this examination is not disclosed in the record. Claimant was treated in the emergency room of Memorial Hospital on May 27, 1976. At this time he informed the hospital staff that he had sustained an injury at work approximately one week prior to his visit. Claimant was then referred to Dr. Paul P. Meirink. It was stipulated that claimant first saw Dr. Meirink on May 28, 1976. On this occasion he informed Dr. Meirink that his condition occurred three days prior to the examination. Claimant denied that his reason for leaving work was that he was angry about some matter related to his employment. He acknowledged that he resided across the street from respondent and again stated that he had never personally notified respondent of his alleged accidental injury. Claimant admitted that he had been involved in a fight subsequent to his injury and stated, "I hit some guy with

a garden hoe. That was all there was to it." In addition, he stated that the rabbit feed bags to which he referred on direct examination weighed approximately 25 pounds and he expressed his doubt that he had carried more than one bag at a time.

The deposition of Dr. Meirink, a board certified orthopedic surgeon, was introduced into evidence by claimant. Dr. Meirink stated in his deposition that he examined claimant on May 28, 1976, at the request of Dr. Harry Parks, claimant's family physician. Claimant related a history of injury to his back while loading trash at his job and indicated that the injury occurred three days prior to the examination. Dr. Meirink diagnosed claimant's condition as spondylolysis with first-degree spondylolisthesis at L-5. Claimant was hospitalized at St. Elizabeth's Hospital, where a conservative treatment program was followed. This treatment included administration of a series of "epidural blocks." Dr. Meirink elaborated that the administration of epidural blocks is a mode of treatment which involves the injection of a steriod into the dura layer covering the spinal cord. He stated that claimant responded well to this therapy and that he was discharged from the hospital with instructions to wear a lumbosacral corset and to avoid heavy lifting. Claimant was subsequently readmitted to the hospital on June 6, 1976, and a conservative treatment plan was again utilized. Upon discharge from the hospital on July 2, 1976, claimant was advised to avoid heavy physical labor and was referred to the Department of Vocational Rehabilitation for sedentary job training. Dr. Meirink also examined claimant on August 6, 1976. At this time claimant stated that he felt "100% better," and Dr. Meirink reported that the results of this examination were all within normal limits. In addition, Dr. Meirink testified that, based upon a reasonable degree of medical and surgical certainty, he believed claimant's condition might

or could have been related to his employment. He stated that, at a minimum, claimant's condition was an aggravation of a preexisting condition.

On cross-examination, Dr. Meirink stated that claimant's spondylolysis, a condition which he described as the formation of scar tissue in areas of a claimant's spine which would normally consist of bone, was a congenital defect. He stated that claimant's spondylolisthesis, a condition which involves slippage of vertebrae, could be caused by repeated trauma. In addition, Dr. Meirink stated that an individual who suffered from this condition would typically experience a great deal of pain; he might, however, be able to continue working immediately following the onset of the condition. On redirect examination, Dr. Meirink reiterated that it was his opinion, based upon a reasonable degree of medical and surgical certainty, that claimant's condition was causally related to his employment.

Respondent called James Hubbard, previously employed as a truck driver by respondent. Hubbard testified that he worked with claimant on claimant's last day of employment with respondent. Hubbard stated that he was not aware of anything unusual happening to claimant, that he did not notice claimant experience difficulty in lifting, and that, to his knowledge, claimant had not been injured while working. Claimant had asked Hubbard to inform respondent that he was leaving work because he felt sick. Hubbard stated, however, that claimant gave as his reason for leaving that he was suffering from a cold. In addition, Hubbard stated that they collected refuse in the vicinity of Hollywood Heights Road at some time in the afternoon.

On cross-examination, Hubbard stated that he was uncertain as to the date of claimant's last day of work and that claimant had been emptying 20-gallon trash cans that morning. In addition, he stated that, while claimant was working, he was driving the truck and therefore unable to

observe him.

Mrs. Irma Seiber, wife and employee of respondent, was the next witness called. She testified that she had spent approximately 30 minutes with claimant on the day that he was allegedly injured. She stated that during this period claimant did not mention any injury, but he did state that he felt like quitting because he did not like working with Hubbard.

James Seiber, respondent, was called as a witness and testified that neither claimant nor anyone on claimant's behalf had notified him that claimant had sustained an accidental injury. He confirmed the fact that claimant resided across the street and added, "[I]t is 47 feet 7 inches to my driveway." In addition, he stated that, since the alleged accident, he had seen claimant carrying groceries, fixing an outdoor television antenna, and carrying two bags of rabbit feed, one under each arm.

On cross-examination, respondent identified two documents that he had received from Memorial Hospital. The first was a statement requesting payment for out-patient diagnostic services provided to claimant at Memorial Hospital. This document, dated May 27, 1976, indicated that claimant's condition was employment related. The second document was a letter from Memorial Hospital requesting confirmation that claimant's treatment would be paid for through a workmen's compensation program. Respondent stated that he called the hospital and denied that claimant had been injured on the job. In addition, he stated that within approximately one week after the accident he was aware that claimant was com-plaining of a job-related injury but that claimant did not tell him.

At the close of the evidence presented by the parties, the arbitrator asked claimant why he did not discuss his alleged accidental injury with respondent. Claimant stated that he believed that it would be better not to

discuss the matter with respondent, adding that he preferred to avoid "a big argument."

Respondent argues in this court that the decision of the Industrial Commission is against the manifest weight of the evidence. Respondent principally contends that claimant's testimony was so thoroughly contradicted that it alone is insufficient to support an award of compensation. In the alternative, respondent argues that the cause was barred by claimant's total failure to provide notice of the alleged accident. We will first address respondent's argument concerning notice of the accident.

Section 6(c) of the Workmen's Compensation Act provides in relevant part:

> "Notice of the accident should be given to the employer as soon as practicable, but not later than 45 days after the accident, and if the Commission shall find that the failure to give such notice within 45 days substantially prejudiced the rights of the employer, the Commission in its discretion, may order that the right of the employee to proceed under this act shall be barred.
>
> &ast; &ast; &ast;
>
> No defect or inaccuracy of such notice shall be a bar to the maintenance of proceedings on arbitration or otherwise by the employee unless the employer proves that he is unduly prejudiced in such proceedings by such defect or inaccuracy." (Ill. Rev. Stat. 1975, ch. 48, par. 138.6(c).)

The purpose of the notice requirement is to enable the employer to investigate the alleged accident. (*Atlantic & Pacific Tea Co. v. Industrial Com.* (1977), 67 Ill. 2d 137, 143.) Compliance with the requirement is accomplished by placing the employer in possession of the known facts related to the accident within the statutory period. *Fenix-Scisson Construction Co. v. Industrial Com.* (1963), 27 Ill. 2d 354, 357.

In the present case, claimant's application for adjustment of claim had been filed with the Commission on June 23, 1976, approximately one month after the date of the

alleged accidental injury. Respondent admitted that within one week of the alleged accidental injury he was aware of the fact that claimant was complaining of an employment-related injury. Respondent also acknowledged receipt from Memorial Hospital of a request for payment for treatment and a request for confirmation that the expense of treatment would be covered by a workmen's compensation plan. Both of these documents were admittedly received within the limitations period allotted to provide notice.

We cannot agree with respondent that claimant failed to provide notice of the accident as required by the Act. In construing similar provisions of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, par. 8–102), we have held that the filing of a complaint within the statutory period allotted to provide notice satisfied the notice requirement of the Tort Immunity Act. (*Dunbar v. Reiser* (1976), 64 Ill. 2d 230, 237.) We conclude that the purpose of the notice requirement of section 6(c) of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.6(c)), to enable the employer to investigate the alleged accident, is satisfied by the filing of an application for adjustment of claim within the period allotted to provide notice. We therefore hold that claimant has satisfied his statutory obligation to provide notice of the accident in the instant case.

Respondent next contends, relying principally upon *Caterpillar Tractor Co. v. Industrial Com.* (1978), 73 Ill. 2d 311, that claimant's testimony was so thoroughly contradicted in the proceedings below that it, standing alone, was insufficient to support an award of compensation. Respondent concedes that it is primarily the function of the Commission to determine disputed questions of fact, but he argues that questions of credibility should be left to the arbitrator.

We agree with respondent that the burden is upon the

party seeking to prove by a preponderance of credible evidence the elements of his claim, particularly the prerequisite that the injury complained of arose out of and in the course of his employment. (*United Air Lines, Inc. v. Industrial Com.* (1980), 81 Ill. 2d 85, 96.) It is also true that a claimant's testimony, standing alone, may support an award where all of the facts and circumstances do not preponderate in favor of the opposite conclusion. It is the function of the Commission, however, to judge the credibility of witnesses and to draw reasonable inferences from the testimony even where the Commission's findings differ from those of the arbitrator and no further evidence has been taken by the Commission. (*Forrest v. Industrial Com.* (1979), 77 Ill. 2d 86, 92-93.) It is only where the Commission's decision is against the manifest weight of the evidence that the decision must be set aside. *Eagle Sheet Metal Co. v. Industrial Com.* (1980), 81 Ill. 2d 31, 36.

In the present case, claimant's testimony was contradicted in four instances. First, Hubbard testified that claimant stated that he left work because he was not feeling well and that he complained of suffering from a cold. Second, Hubbard testified that they collected trash in the vicinity of Hollywood Heights Road in the afternoon, contrary to claimant's testimony that this was accomplished in the morning. Third, contrary to claimant's testimony that he believed that he mentioned his condition to respondent's wife, Mrs. Seiber testified that claimant did not mention this condition but that he did state that he felt like quitting and that he did not get along with Hubbard. Fourth, in contrast to claimant's belief that he had only carried one bag of rabbit feed at a time, respondent testified that he had seen claimant carrying two bags, one under each arm. In addition, claimant had represented to his physician and the staff at Memorial Hospital that he had been injured at work while lifting

trash cans, although he incorrectly represented the date of this injury.

We cannot state, on the basis of the inconsistencies presented in the record, that claimant's testimony is so obviously false that it is our duty to set aside the decision of the Commission. These inconsistencies, and the extent of impairment of claimant's credibility through impeachment, present questions of fact more properly resolved by the Commission. (*County of Cook v. Industrial Com.* (1965), 32 Ill. 2d 181, 183.) Nor can it be said that claimant's testimony is totally uncorroborated. The medical records introduced by both claimant and respondent, although inconsistent as to the date of the accident, indicate that claimant had on all occasions represented that he was injured at work. Respondent's reliance upon *Caterpillar Tractor Co. v. Industrial Com.* (1978), 73 Ill. 2d 311, is misplaced. In *Caterpillar Tractor* not only was claimant's testimony repeatedly contradicted, but also there was strong evidence that his injury occurred on a date other than when he was working.

In summary, we do not believe that the decision of the Commission is against the manifest weight of the evidence. For the reasons stated, the judgment of the circuit court is affirmed.

*Judgment affirmed.*

MR. CHIEF JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.