ILLINOIS BELL TELEPHONE COMPANY, Appellant, v. THE INDUS-TRIAL COMMISSION *et al.* (Lawrence A. Urbaniak, Appellee).

First District (Industrial Commission Division)   No. 1—93—3555WC

Opinion filed July 8, 1994.

Stevenson, Rusin & Friedman, Ltd., of Chicago (John A. Maciorowski, of counsel), for appellant.

Hugh J. McCarthy & Associates, Ltd., of Chicago (Nancy Jo Doyle, of counsel), for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

The employer, Illinois Bell Telephone Company, appeals from a decision of the circuit court of Cook County which confirmed a decision of the Illinois Industrial Commission awarding benefits to the claimant, Lawrence Urbaniak, for 100% loss of use of his left foot. The following evidence was admitted at the August 18, 1987, arbitration hearing.

Claimant testified that he worked for the employer as a PBX installer. On March 30, 1977, while stepping off a soil pipe, he caught the back of his left heel on a raised concrete slab, and he felt "everything just pulled." He "blacked out" and was taken to the emergency room at Presbyterian-St. Luke's Hospital. His left foot was X-rayed, and an ace bandage was applied to his left foot; he was given a cane and released from the hospital the same day. The next day, he was examined by Dr. Stone from the employer's medical department. Claimant was off work between March 30 and May 30, 1977. When he returned to work, he was assigned light duty which restricted him from climbing ladders.

Claimant testified further that at the end of May 1977, he experienced difficulty walking; his left foot was going completely numb, and he had no control over it. Dr. Stone referred him to Dr. George Lewinnek, who examined him on June 22, 1977. Dr. Lewinnek prescribed Inuducin three times a day. Claimant was again off work between August 8, 1977, and September 23, 1977. Claimant continued to see Dr. Lewinnek, who injected cortisone shots into his left ankle. However, by April 1978, claimant returned to Dr. Stone because he could not walk. Dr. Stone referred him to Dr. William Kernahan. After X rays and tests were performed, Dr. Kernahan prescribed a short leg brace for his left leg which he wore for two months. He was again off work between April 5 and September 11, 1978. When he returned to work, he was again on light duty; no ladder climbing and not much walking.

Claimant testified further that on September 20, 1979, he again saw Dr. Kernahan because his left foot was going limp. Dr. Kernahan performed surgery on claimant's left foot on November 7, 1979. Claimant was off work between September 24, 1979, and January 18, 1980. Again, when he returned to work, he was assigned light duties with the same prior restrictions. Claimant noticed a snapping sound coming from the left side of his ankle when he would rise from a sitting position. Dr. Kernahan operated on him again on June 11, 1980. Claimant was off work until September 12, 1980, when he returned to light duties. By December 1980, his left foot was so sore, he could not walk on it. Dr. Kernahan prescribed a left metatarsal

pad and orthopedic shoes. By June 1981, he was experiencing a burning sensation on the ball of his foot. He was off work between August 18 and 21, 1981.

Claimant testified further that he again underwent surgery on September 17, 1981, to remove a nerve in his left foot and was off work until December 4, 1981, when he returned to light duties. Scar tissue formed over the incision and a callous developed. The callous grew upwards into his foot, and he could not walk on it. Dr. Kernahan had to trim the callous every two weeks. Eventually, claimant was referred to Dr. Jack Curtin, a plastic surgeon, whom he saw on March 11, 1983, regarding the callous. Dr. Curtin operated on March 28, 1983, but claimant continued to need to have the callous on his left foot trimmed. Claimant continued to see Dr. Kernahan in 1985 and 1986.

Claimant testified further that in 1985 he returned to full duties, working as a PBX installer until November 1986 when he took a surveillance job, essentially a desk job, because he was having problems with his left foot.

Claimant testified further that prior to March 30, 1977, he had had no problems with his left ankle, foot or heel, nor had he had any medical treatment for those areas. At the time of the arbitration hearing, claimant experienced pain in his left heel when he walked; once a week, he had to trim the callous from the bottom of his left foot or he could not walk on it; and he could not be on his feet for more than an hour without having to sit down. Otherwise, he suffered excruciating pain in the ball and heel of his left foot. In order to go out walking, he had to tape his foot up or use an ankle brace.

On cross-examination, claimant acknowledged that he worked as a PBX installer from July 1983 to November 1986. That job required him to be on his feet eight hours a day. He did not miss any time from work during that period because he "paced" himself. He no longer used a leg brace. Although the job required him to climb ladders, he usually had an apprentice. He was no longer taking any medication for his foot.

Certain medical records and doctors' reports were admitted into evidence and are summarized below.

Following his accident on March 30, 1977, claimant underwent four surgical procedures. On November 9, 1979, Dr. Kernahan performed a release of the left tarsal tunnel. On June 13, 1980, Dr. Kernahan performed an excision of loose fragments and reefing of anterior talofibular ligament. On September 18, 1981, Dr. Kernahan performed an excision of Morton's neuroma, left. Finally, on March 28, 1983, Dr. Jack Curtin performed a resection of the plantar callus

with resection of the head of the fourth metatarsal and adjacent tissue plantar flap rotation for closure.

In a letter dated December 5, 1978, to the employer's medical director, Dr. Kernahan noted that while hunting in Michigan, claimant suffered some momentary discomfort when he stepped onto a different surface but was able to continue hunting without difficulty. Claimant was also noticing a tendon "jumping" when he sat on the floor with his foot curled up underneath him; when he got up, the tendon would snap back into place.

At his attorney's request, claimant was evaluated by Dr. William Fitzsimmons on January 24 and March 31, 1987. On the first visit, Dr. Fitzsimmons took a medical history which included the circumstances surrounding claimant's March 30, 1977, injury and conducted an examination of claimant. Claimant complained of pain in his left foot and difficulty walking. If he was on his feet for a long time, he limped favoring his left foot. The pain was so great at times he had to elevate his left foot and remove his shoe. Based upon claimant's history and the physical examination, Dr. Fitzsimmons opined that in the course of his employment on March 30, 1977, claimant had sustained injuries to his left foot that required multiple surgical interventions. After the second visit, Dr. Fitzsimmons' opinion remained unchanged, and he believed that claimant's condition was permanent.

Claimant was also evaluated by Dr. James Milgram on March 25, 1986. His examination of claimant revealed a full range of motion in both ankles and prominent bunion deformity, more on the left foot than the right foot. Tinel's sign was negative. He had no tenderness along the course of the peroneal tendon; inversion, eversion, dorsiflexion, and plantar flexion of the feet and ankles was intact. Although Dr. Milgram ordered X rays, claimant refused to have any taken because he had just had them done at another hospital. Acknowledging that he had not seen any X rays or medical records concerning claimant, nonetheless, Dr. Milgram expressed doubts that claimant's injury in 1977 could have caused abnormalities in three different parts of his foot and found that it was "far-fetched" to say that all of claimant's symptoms were related to his injury on March 30, 1977.

Claimant was also evaluated by Dr. Bart W. Gastwirth. After conducting an examination, Dr. Gastwirth concluded that claimant was suffering from a pressure neuritis of the tibial nerve left foot, amputation neroma third interspace left foot and hallux abducto valgus bilateral with the left foot being more symptomatic. Dr. Gastwirth commented that it would have been helpful for a complete review to have X rays. He agreed with Dr. Milgram, stating:

"Based upon my evaluation of the [claimant] on this day, I find it difficult to relate the three areas of complaints to the original injury. The symptomatology that the [claimant] presents with on this date may be the sequela of the invasive nature of the patient's former treatments. Since the patient presents with bunion deformities on both feet, I would consider it also unlikely that the development of a bunion deformity of the left foot was due to in any part the original injury."

In his corrected decision, the arbitrator determined that claimant had suffered the loss of the use of his left foot to the extent of 100%, finding that claimant was no longer able to do any work other than that in a sitting position. The arbitrator based his determination on the findings of Dr. Fitzsimmons and the testimony of the claimant whom he found to be very credible.

The employer sought review before the Commission, complaining, *inter alia*, that the arbitrator had failed to make a finding as to causal connection. Without further comment, the Commission affirmed the arbitrator's decision. On further review, the circuit court confirmed the Commission's decision. On the issue of causal connection, the court found that while the Commission did not specifically address the issue, "it could imply the relationship existed because of [claimant's] testimony, the scenario offered by the treating physicians from the date of the accident to the date of the arbitration hearing, and the chain of surgical procedures performed."

This appeal by the employer followed.

The employer contends, first, that the failure of the Commission to make specific findings of fact or conclusions of law as to causal connection between the claimant's injury and his present condition of ill-being requires that the case be remanded to the Commission for that determination. We disagree.

A claimant has the burden of proving all the elements of his case in order to recover benefits under the Workers' Compensation Act. (*A.M.T.C. of Illinois, Inc. v. Industrial Comm'n* (1979), 77 Ill. 2d 482, 488.) This burden of proof must be met by a preponderance or greater weight of the evidence, and an award that is against the manifest weight of the evidence must be set aside. (*A.M.T.C. of Illinois*, 77 Ill. 2d at 488.) Liability cannot be premised upon imagination, speculation or conjecture but must arise from facts established by a preponderance of the evidence. 77 Ill. 2d at 488.

The employer argues that in light of the opinions of Drs. Milgram and Gastwirth which questioned the relationship between the various procedures performed and the injury of March 30, 1977, as well as the fact that both feet suffered bunion deformities while only

the left foot was involved in the initial injury, the failure of the Commission to make specific findings as to causality in this case renders it impossible to determine whether the Commission overlooked the causality issue or, if it did not, what in fact the basis for that decision was.

A similar situation arose in *Great Plains Gas Co. v. Industrial Comm'n* (1984), 101 Ill. 2d 122. In that case, the arbitrator made an award of benefits under section 8(d)(2) of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(d)(2) (now 820 ILCS 305/8(d)(2) (West 1992))). The decision was affirmed by the Commission and the circuit court. On appeal, the employer argued that because the Commission did not set forth any conclusions of law in its decision, it failed to comply properly with its statutory duty in rendering the award. The employee argued that the Commission may have decided that there were no questions of law to be decided other than those answered implicitly by the Commission's decision that the employee's injuries were compensable under section 8(d)(2). The supreme court held that the failure of the Commission to state a separate conclusion of law on that point did not require that its decision be set aside. *Great Plains Gas Co.*, 101 Ill. 2d at 127-28.

The arbitrator and the Commission are required to make findings of fact and law. (*Swift & Co. v. Industrial Comm'n* (1986), 150 Ill. App. 3d 216, 220.) There is no requirement, however, that the findings be stated in any particular language. (*Swift & Co.*, 150 Ill. App. 3d at 221.) Findings regarding the evidence may be implied from the Commission's decision. 150 Ill. App. 3d at 221.

●1 In the case at bar, the Commission adopted the decision of the arbitrator. In his decision, the arbitrator adopted the findings of Dr. William Fitzsimmons. Dr. Fitzsimmons had concluded that claimant's injury of March 30, 1977, had necessitated those surgical procedures that followed. The circuit court concluded that the Commission could have implicitly found a causal connection between claimant's injury and his state of ill-being based upon the evidence in the record. We conclude that the Commission's failure in this case to specifically address the issue of causal connection does not require reversal.

The employer contends also that the Commission's decision awarding 100% loss of the use of claimant's left foot was against the manifest weight of the evidence. The employer asks that this court modify the Commission's decision to reflect a loss of use no greater than 35 to 40% or a remand to the Commission for a decision consistent with the evidence.

The employer relies on the fact that neither Drs. Milgram, Gastwirth nor Fitzsimmons ever restricted claimant's employment

capabilities. The employer also points out that from 1983 to 1986, claimant had returned to work as a PBX installer with full duties and that his decision to switch to surveillance was not ordered by any of his physicians. The employer also points out that both Drs. Milgram and Gastwirth found that, *inter alia,* claimant was walking normally.

This court will not substitute its judgment for that of the Commission unless its findings are against the manifest weight of the evidence. (*Wagner Castings Co. v. Industrial Comm'n* (1993), 241 Ill. App. 3d 584, 594-95.) In the presence of conflicting medical opinions, the Commission's determination is given substantial deference and will be upheld unless contrary to the manifest weight of the evidence. (*Material Service Corp. v. Industrial Comm'n* (1983), 97 Ill. 2d 382, 387.) The manifest weight of the evidence is that which is the clearly evident, plain and indisputable weight of the evidence, and for a finding to be against the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Wagner Castings Co.,* 241 Ill. App. 3d at 595.

Loss of a member is complete when the normal use of the member has been taken away. (*C.S.T. Erection Co. v. Industrial Comm'n* (1975), 61 Ill. 2d 251, 257.) A claimant's testimony, standing alone, may support an award when all of the facts and circumstances do not preponderate in favor of the opposite conclusion. (*Seiber v. Industrial Comm'n* (1980), 82 Ill. 2d 87, 97.) In the case at bar, claimant testified that he took the surveillance job because he was having problems with the functioning of his left foot. He testified that prior to the accident of March 30, 1977, he had not had problems with his left foot or ankle. He further testified as to the pain and difficulties he now experienced with his left foot. In Dr. Fitzsimmons' opinion, the condition of claimant's left foot was permanent.

●2 The employer's reliance on *Bryant v. Industrial Comm'n* (1993), 250 Ill. App. 3d 659, is misplaced. In that case, this court upheld a circuit court decision reversing a Commission finding of 100% loss of use of Bryant's right hand. The court pointed out that there was no medical evidence supporting the Commission's findings and that Bryant did not complain that he could not use his right hand, only that he could not use it in the same way he had prior to his accident. In the case at bar, claimant, whose testimony the arbitrator found to be extremely credible, left his job as a PBX installer, which required him to be on his feet eight hours a day, to take a desk job because of his problems with his feet. Unlike *Bryant,* there is no indication in the record here that claimant's complaints about the difficulties with his feet are not genuine.

We conclude that the Commission's decision awarding claimant 100% loss of the use of his left foot was not against the manifest weight of the evidence.

The judgment of the circuit court is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, SLATER, and RARICK, JJ., concur.