# Illinois Official Reports

## Appellate Court

---

### *Oliver v. Illinois Workers' Compensation Comm'n*,
### 2015 IL App (1st) 143836WC

---

| | |
|---|---|
| Appellate Court Caption | TOMMY OLIVER, Appellee, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al*. (Rausch Construction, Appellant). |
| District & No. | First District, Workers' Compensation Commission Division<br>Docket No. 1-14-3836WC |
| Filed<br>Rehearing denied | December 18, 2015<br>February 1, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-L-50328; the Hon. James M. McGing, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | George F. Klauke, Jr., of Klauke Law Group, LLC, of Schaumburg, for appellant.<br><br>Mitchell W. Horwitz and Tyler D. Berberich, both of Horwitz, Horwitz & Associates, Ltd., of Chicago, for appellee. |
| Panel | JUSTICE STEWART delivered the judgment of the court, with opinion.<br>Presiding Justice Holdridge and Justices Hoffman, Hudson, and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    On July 28, 2011, the claimant, Tommy Oliver, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2010)), seeking benefits for injuries he allegedly sustained on July 19, 2011, while working for the employer, Rausch Construction.

¶ 2    On October 3, 2011, the claimant filed a petition for penalties under sections 19(k) and 19(*l*) of the Act (820 ILCS 305/19(k), (*l*) (West 2010)) and attorney fees under section 16 of the Act (820 ILCS 305/16 (West 2010)), claiming that the employer had not paid temporary total disability (TTD) benefits or his medical bills. The employer filed a response, asserting that it had subpoenaed the claimant's medical records and informed the claimant's attorney of its need for additional records to determine compensability.

¶ 3    On February 21, 2013, the claim proceeded to an arbitration hearing. On March 9, 2012, the arbitrator filed a decision, awarding the claimant TTD benefits of $1,087.20 per week for 12.429 weeks, from August 1 through October 25, 2011; $20,510.37 in medical expenses; and permanent partial disability (PPD) benefits of $695.78 per week for 50.6 weeks, representing a 20% loss of use of the right arm. The arbitrator also awarded the claimant $4,230 in section 19(*l*) penalties, $17,011.50 in section 19(k) penalties, and $6,804.64 in section 16 attorney fees, finding that the employer's refusal to pay him TTD benefits and medical expenses was unreasonable and vexatious. The arbitrator noted that the employer did not dispute liability based on the claimant's medical records; instead, the employer denied benefits based on the fact that the claimant did not report the accident until six days after it occurred.

¶ 4    The employer sought review of the arbitrator's decision before the Illinois Workers' Compensation Commission (Commission). On November 26, 2012, the Commission filed its decision, finding that penalties and attorney fees should not be imposed against the employer because the employer's conduct in the defense of this claim was neither unreasonable nor vexatious. The Commission reversed the arbitrator's award of penalties and attorney fees, corrected the arbitrator's decision to reflect an award of TTD benefits for $12^{2}/_{7}$ weeks, corrected several minor typographical errors, and otherwise affirmed and adopted the arbitrator's decision.

¶ 5    The claimant filed a timely petition for judicial review in the circuit court of Cook County. The circuit court remanded the matter to the Commission for further findings of fact regarding the Commission's decision as to penalties and attorney fees. The employer appealed the circuit court's decision to the appellate court, but the appeal was dismissed for lack of jurisdiction because the circuit court's remand order was not a final order.

¶ 6    On March 18, 2014, the Commission issued its decision on remand. In its decision on remand, the Commission restated its reasons for denying penalties and attorney fees in its original decision.

¶ 7    The claimant filed a timely petition for judicial review in the circuit court. On December 2, 2014, the circuit court entered its opinion, finding that the Commission's decision as to penalties and attorney fees was against the manifest weight of the evidence. The circuit court, therefore, reversed the Commission's decision and reinstated the arbitrator's decision with respect to penalties and attorney fees.

¶ 8    The employer filed a timely appeal. On appeal, the employer argues that the Commission's decision as to penalties and attorney fees was not against the manifest weight of the evidence. For the reasons that follow, we affirm the judgment of the circuit court, which reversed the Commission's decision and reinstated the arbitrator's decision with respect to penalties and attorney fees.

¶ 9                                                  BACKGROUND

¶ 10    On July 28, 2011, the claimant filed an application for adjustment of claim pursuant to the Act, seeking benefits for injuries he allegedly sustained on July 19, 2011, while working for the employer.

¶ 11    On October 3, 2011, the claimant filed a petition for penalties under sections 19(k) and 19(*l*) of the Act and attorney fees under section 16 of the Act, claiming that the employer had not paid TTD benefits or his medical bills. The employer filed a response, asserting that it had subpoenaed the claimant's medical records and informed his attorney of its need for additional records to determine compensability.

¶ 12    On February 21, 2012, the claim proceeded to an arbitration hearing. The pertinent evidence presented at the arbitration hearing can be summarized as follows.

¶ 13    The claimant testified that, on July 19, 2011, he was working as a pile driver for the employer on a project at Belmont Harbor, which is on the shore of Lake Michigan in Chicago. The only other days he had worked for the employer were July 15 and 18, 2011. He stated that, on the day of the accident, he was standing on a small barge using an acetylene and oxygen torch to cut steel when some sparks or fire flew out and struck him in the chest. He testified that, in response, he jerked his right arm back, striking his right elbow against a steel wall. He stated that, when he hit his elbow, he "hollered out." He testified that a coworker, Tita Gosten, heard him holler out and asked if he was hurt.

¶ 14    The claimant testified that, after he hit his elbow, he worked the rest of the day and was laid off at the end of the day. At that time, he noticed bruising and a little blood. He testified that he did not report the accident that day because he thought it was just a regular injury that comes with construction work. He explained that he did not report every bump and bruise he received on the job. That evening, his elbow began swelling, and, over the next several days, the swelling and discomfort worsened.

¶ 15    On July 25, 2011, the claimant saw Dr. Bryan Waxman, an orthopedic surgeon at the Illinois Bone and Joint Institute, reporting that he had injured his right elbow at work approximately a week earlier when he hit his elbow on a metal beam and that he had noticed swelling and some discomfort that night. The doctor noted that, approximately 10 years earlier, the claimant had a triceps avulsion, which had been surgically repaired, and that his elbow had been fine since that time. Dr. Waxman suspected another triceps avulsion and ordered a magnetic resonance imaging (MRI) scan, which showed a full-thickness tear involving the triceps tendon.

¶ 16    After seeing Dr. Waxman on July 25, 2011, the claimant called the employer to report his accident. His call was directed to Patrick Kutzer, the employer's site superintendent. The claimant testified that Kutzer told him that he should have reported the accident on the day it occurred and that Kutzer would not allow him to fill out an accident report even though he tried to explain that he was not aware of the extent of his injuries on the day of the accident.

¶ 17    Dr. Waxman surgically repaired the claimant's right triceps tendon on August 1, 2011. The claimant followed up with Dr. Waxman after surgery and underwent physical therapy from August 18 through October 24, 2011. Dr. Waxman released him to return to work with a 15-pound lifting restriction on his right arm on October 25, 2011. He testified that he then went to work for Aretha Construction, where he was a foreman most of the time. Dr. Waxman released him from his care on December 14, 2011, noting that he was "pretty much doing all of his normal activities." The doctor advised him to slowly get back to heavy lifting, noting that it could take him six to nine months to do so.

¶ 18    The claimant testified that he still did not have full use of his right arm and that he was still experiencing pain when welding, especially when working overhead. He stated that he could not keep his arm in the same spot for very long when it was elevated because it was painful. He testified that he had pain in the joints of his arm. He stated that lifting was also painful, especially lifting something into a truck. He testified that he understood that this was just something he had to live with. He stated that he had not been back to Dr. Waxman and that the doctor had given him pain pills, which he only used when he had to. He denied injuring his right arm since the day of the accident.

¶ 19    The claimant testified that he had injured his right arm in a work-related accident in 1999. As a result, he had undergone surgery to repair his triceps tendon and had received a settlement of 20% loss of use of his right arm. He stated that he had stopped treating for that injury about a year later and that he had returned to work. He testified that, from approximately 2000 until his injury on July 19, 2011, he had received no treatment for his right arm.

¶ 20    At the time of the arbitration hearing, the employer had not paid any workers' compensation benefits or medical bills related to the claimant's July 19, 2011, injury. The claimant testified that the only reason the employer had given him for refusing to pay him benefits was that he did not report the accident on the day it occurred.

¶ 21    Patrick Kutzer, the employer's site superintendent at Belmont Harbor, testified on the employer's behalf. The claimant worked for him as a pile driver on July 15, 18, and 19, 2011. He testified that, during those three days, he interacted with the claimant before work, at break times, and at the end of the day. He stated that, when he saw the claimant periodically throughout the day on July 19, 2011, he did not notice the claimant having any pain or problems. He testified that he had spoken to the claimant after work that day because it was the claimant's last day.

¶ 22    Kutzer testified that on July 25, 2011, the claimant called to say that he wanted Kutzer to fill out an accident report for the last day he was there because he had hurt himself on the job. Kutzer stated that he told the claimant that he could not fill out an accident report a week after the accident occurred. He testified that it was his experience as a superintendent or job foreman that the accident report had to be filled out the day of the accident. He stated that he "didn't know you could even fill one out after the fact."

¶ 23    Kutzer testified that he had burned sheet pile with a torch hundreds of times. He stated that, when cutting with a torch, it was common for molten metal, sparks, or slag to blow back in the direction of the person doing the cutting.

¶ 24    On cross-examination, Kutzer acknowledged that he knew of no factual or medical basis to dispute that the claimant was injured at work on July 19, 2011. He testified that, as far as

he knew, the only issue the employer had with this case was that the claimant reported his accident six days after it occurred.

¶ 25 On March 9, 2012, the arbitrator issued a decision, awarding the claimant TTD benefits of $1,087.20 per week for 12.429 weeks, from August 1 through October 25, 2011; $20,510.37 in medical expenses; and PPD benefits of $695.78 per week for 50.6 weeks, representing a 20% loss of use of his right arm. The arbitrator also awarded the claimant $4,230 in section 19(*l*) penalties; $17,011.59 in section 19(k) penalties; and $6,804.64 in section 16 attorney fees, finding that the employer's refusal to pay him TTD benefits and medical expenses was unreasonable and vexatious. The arbitrator explained her reasoning as follows:

> "[The claimant's] Petition for Penalties and Attorneys' Fees was filed Oct. 3, 2011. [Citation.] [The employer] filed a Response on Oct. 4, 2011, indicating it had informed [the claimant's] counsel additional medical records were needed to determine compensability and that it had subpoenaed those records. The Arbitrator takes [the employer] at its word and notes [the employer] did not rely on the medical records as a basis for disputing liability at trial. The only reason for denying benefits apparent from the record is that [the claimant] waited six days to report the accident. [The employer's] only witness testified that was the only basis for dispute as far as he knew. Since the accident consisted of bumping the back of his right elbow against a metal wall, [the claimant's] hope that his injury would be just another of many bumps and bruises not requiring medical care or an accident report, was *** entirely reasonable. The denial of benefits for this reason in the face of the medical records was not reasonable."

¶ 26 The employer sought review of the arbitrator's decision before the Commission, arguing that the arbitrator erred in awarding penalties and attorney fees because the claimant's failure to report a work injury on the day it occurred was a reasonable basis for challenging liability. The employer relied on Kutzer's testimony that the claimant did not appear to be in pain, that the claimant did not report an accident on that day, and that the claimant did not inform Kutzer of his injury until six days later.

¶ 27 In response, the claimant argued that the employer's failure to pay TTD benefits and medical bills was unreasonable, vexatious, and solely for the purpose of delay as the medical records fully supported his claim. He argued that the fact that he reported the accident six days after it occurred does not create a reasonable basis for the employer's failure to pay benefits as he credibly testified that his right elbow condition worsened after he went home on the day of the accident.

¶ 28 On November 26, 2012, the Commission filed its opinion, finding that penalties and attorney fees "should not be imposed against [the employer] in the present case" because "[the employer's] conduct in the defense of this claim was neither unreasonable nor vexatious as there were legitimate issues in dispute with respect to accident and causal connection, such as [the claimant's] failure to report a work accident on his last day of work, [the claimant's] request to fill out an accident report six days after the reported work injury and Mr. Kutzer's testimony." The Commission reversed the arbitrator's award of penalties and attorney fees, corrected the arbitrator's decision to reflect an award of TTD benefits for $12^2/_7$ weeks, corrected several minor typographical errors, and otherwise affirmed and adopted the arbitrator's decision.

¶ 29    The claimant filed a timely petition for judicial review in the circuit court. The circuit court remanded the matter to the Commission for further findings of fact regarding the Commission's decision as to penalties and attorney fees. The employer appealed the circuit court's decision to the appellate court, but the appeal was dismissed for lack of jurisdiction because the circuit court's remand order was not a final order.

¶ 30    On March 18, 2014, the Commission issued its decision on remand, which provides, in pertinent part, as follows:

"In compliance with the circuit court's order, the Commission expands on the reasons why it found [the claimant] ineligible for penalties and attorney fees as stated in its November 26, 2012, Decision and Opinion on Review. The Commission denies [the claimant's] request for penalties pursuant to sections 19(k) and 19(l) and attorney fees pursuant to section 16 based on the following: (1) although [the claimant] alleged he injured his right elbow on his last day of work, he failed to report he had sustained a work accident that day; (2) [the claimant] sought medical treatment and requested to complete an accident report six days after the reported work injury; and (3) Mr. Kutzer, [the claimant's] supervisor on the day of the accident, testified that [the claimant] did not appear to be in pain and did not report an accident on the day he claimed it occurred. These facts provide reasonable explanation for [the employer's] denial of [the claimant's] claim and show that [the employer's] refusal to pay benefits was not frivolous, vexatious or solely for the purpose of delay."

¶ 31    The claimant filed a timely petition for judicial review in the circuit court, arguing that the Commission's decision as to penalties and attorney fees was against the manifest weight of the evidence. The circuit court agreed and, on December 2, 2014, entered an order, reversing the Commission's decision and reinstating the arbitrator's decision with respect to penalties and attorney fees. The circuit court explained its reasoning as follows:

"All three (3) of the Commission's purported reasons to support its decision are, in reality, the same reason. That [the claimant] did not report his accident on the day it happened and waited six (6) days to file an accident report with the [e]mployer. The Commission attempts to set a precedent that cannot be allowed; that an employee must report an accident on the day it occurs in order to be eligible for benefits. Such an idea is specifically prohibited by the Act, which provides that an accident must be reported within 45 days of its occurrence. 820 ILCS 305/6(c).

Further, and more importantly, the [c]ourt notes that the [employer] refused to allow [the claimant] to file an accident report six (6) days after the alleged accident. The [employer] then attempts to argue that it reasonably believed that there was no causal connection between the work accident and [the claimant's] current condition of ill-being. The [employer] never allowed [the claimant] to file a report and therefore never conducted an investigation into the accident. An employer cannot be allowed to willfully decide not to investigate a matter and then argue that, even though [it] did not look into it, [it] reasonably believed [it] did not have to pay benefits.

Had the [employer] allowed [the claimant] to file an accident report, investigated it, and *then* determined that there was no causal connection, then [its] delay in paying benefits would be wholly reasonable and not vexatious. This point becomes even more important as [the claimant] testified before the Arbitrator that a fellow employee was present when he was injured, and noticed his reaction to the accident. That is

something the [employer] would likely have found out had [it] investigated the accident. The [employer] stuck its head in the sand and then argued that it could not see or hear anything so it was reasonable for [it] to think nothing was there. That is a dangerous precedent that cannot be allowed." (Emphasis in original.)

¶ 32                                                    ANALYSIS

¶ 33        On appeal, the employer argues that the Commission's decision as to penalties and attorney fees was not against the manifest weight of the evidence. The intent of sections 19(*l*), 19(k), and 16 of the Act "is to implement the Act's purpose to expedite the compensation of industrially injured workers and penalize an employer who unreasonably, or in bad faith, delays or withholds compensation due an employee." *Avon Products, Inc. v. Industrial Comm'n*, 82 Ill. 2d 297, 301, 412 N.E.2d 468, 470 (1980). "Penalties for delayed payment are not intended to inhibit contests of liability *** by employers who honestly believe an employee not entitled to compensation; they are intended to promote the prompt payment of compensation where due and to deter those occasional employers or insurance carriers who might withhold payment from other than legitimate motives." *Id.* at 301-02, 412 N.E.2d at 470.

¶ 34        The standard for awarding penalties under section 19(*l*) differs from the standard for awarding penalties and attorney fees under sections 19(k) and 16. *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 514-15, 702 N.E.2d 545, 552-53 (1998).

¶ 35        We begin our analysis by considering the Commission's denial of penalties under section 19(*l*) of the Act, which provides, in pertinent part, as follows:

            "In case the employer or his or her insurance carrier shall *without good and just cause* fail, neglect, refuse, or unreasonably delay the payment of benefits under Section 8(a) or Section 8(b), the Arbitrator or the Commission *shall* allow to the employee additional compensation in the sum of $30 per day for each day that the benefits *** have been so withheld or refused, not to exceed $10,000. A delay in payment of 14 days or more shall create a rebuttable presumption of unreasonable delay." (Emphases added.) 820 ILCS 305/19(*l*) (West 2010).

¶ 36        Penalties imposed under section 19(*l*) are "in the nature of a late fee." *McMahan*, 183 Ill. 2d at 515, 702 N.E.2d at 552. Moreover, the award of section 19(*l*) penalties is mandatory "[i]f the payment is late, for whatever reason, and the employer or its carrier cannot show an adequate justification for the delay." *Id.* "The standard for determining whether an employer has good and just cause for a delay in payment is defined in terms of reasonableness." *Jacobo v. Illinois Workers' Compensation Comm'n*, 2011 IL App (3d) 100807WC, ¶ 20, 959 N.E.2d 772. The employer bears the burden of justifying the delay, and its justification is sufficient only if a reasonable person in the employer's position would have believed the delay was justified. *Board of Education of the City of Chicago v. Industrial Comm'n*, 93 Ill. 2d 1, 9-10, 442 N.E.2d 861, 865 (1982). The Commission's determination of the reasonableness of the delay is a question of fact, which will not be disturbed unless it is against the manifest weight of the evidence. *Jacobo*, 2011 IL App (3d) 100807WC, ¶ 20, 959 N.E.2d 772. The Commission's decision is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent. *Beelman Trucking v. Illinois Workers' Compensation Comm'n*, 233 Ill. 2d 364, 370, 909 N.E.2d 818, 822 (2009).

¶ 37    Here, the Commission found that the employer's refusal to pay benefits was reasonable because (1) although the claimant alleged he was injured on his last day of work, he did not report the accident that day; (2) he sought medical treatment and asked to complete an accident report six days later; and (3) his supervisor on the day of the accident testified that he did not appear to be in pain and did not report an accident on the day it occurred.

¶ 38    As the circuit court noted in its order, "[a]ll three (3) of the Commission's purported reasons to support its decision are, in reality, the same reason." All of the Commission's purported reasons center around the fact that the claimant did not report his accident on the day it occurred. This is not a legitimate basis for denying workers' compensation benefits.

¶ 39    According to the Act, notice of an accident must be reported to the employer within 45 days of the accident. 820 ILCS 305/6(c) (West 2010). Here, there is no dispute that the claimant reported the accident to the employer six days after it occurred.

¶ 40    "The purpose of the notice requirement is to enable the employer to investigate the alleged accident." *Seiber v. Industrial Comm'n*, 82 Ill. 2d 87, 95, 411 N.E.2d 249, 252 (1980). "Compliance with the requirement is accomplished by placing the employer in possession of the known facts related to the accident within the statutory period." *Id.*

¶ 41    Here, the claimant's notice after six days clearly fulfilled the purpose of the Act's notice requirement and was not a legitimate basis for withholding benefits. The circuit court astutely described the employer's unreasonable conduct in this case. After the claimant reported his accident to Kutzer, he was denied the opportunity to fill out a formal accident report, and there is no evidence that the employer investigated the claim in any manner. Instead, the employer denied the claim off-hand, simply because it was not reported on the day of the accident. Kutzer acknowledged that, as far as he knew, the employer had no factual or medical basis to deny the claim, and the only basis he knew of for the denial of the claim was that the claimant reported the accident six days after it occurred. The employer had ample opportunity to investigate the facts and circumstances of this claim but chose not to do so.

¶ 42    In its brief to this court, the employer further argues that Kutzer's testimony that he did not notice the claimant's pain on the day of the accident somehow creates a reasonable basis for denial of benefits. However, whether Kutzer, a lay witness, noticed that the claimant was experiencing symptoms after his accident is of no consequence in the face of clear and undisputed medical records, which detail the claimant's work accident and injury. Again, Kutzer acknowledged that the only issue the employer had with the claim was that the claimant reported his accident six days after it occurred.

¶ 43    Furthermore, when examined along with the medical records and the claimant's testimony, the six-day delay in reporting the accident was reasonable. The claimant's injury worsened over the several days after his accident and did not respond to rest at home. He, therefore, sought medical treatment and reported his accident to the employer six days later. The employer did not dispute the claim based on medical evidence or witness testimony. Instead, it disputed the claim based solely on the fact that the claimant did not report his accident on the day it occurred.

¶ 44    To reach its conclusions in this case, the Commission had to ignore the letter of the law in finding that reporting an accident six days after it occurred is a reasonable basis for disputing a workers' compensation claim. As noted above, a claimant has 45 days to report an accident to an employer under the Act. The Commission did not cite any legal authority to support its position that not reporting an accident on the day it occurred is a reasonable basis for

disputing a claim; nor did the employer cite such legal authority in its appellate brief. Furthermore, the Commission did not even attempt to explain how the employer's refusal to pay the claimant benefits in this case was reasonable in the face of medical records and testimony, which clearly demonstrate a work-related accident and injury.

¶ 45        As the circuit court noted in its decision in this case:

> "The Commission attempts to set a precedent that cannot be allowed; that an employee must report an accident on the day it occurs in order to be eligible for benefits. Such an idea is specifically prohibited by the Act, which provides that an accident must be reported within 45 days of its occurrence. 820 ILCS 305/6(c)."

¶ 46        The Commission seemingly found that an employer can deny benefits on any claim that is not reported on the day of the accident. Kutzer testified that he did not know that he was even allowed to fill out an accident report after the accident date, evidencing the employer's apparent one-day reporting policy. Such a position is in direct contrast to the clear language of the Act, which allows 45 days to report an accident to an employer. Furthermore, such a position is unreasonable based upon the fact that many workplace injuries do not manifest themselves until days after the accident, and many claimants are not in a position to report their accident on the day it occurred. The employer argues that the claimant should have reported his accident on the day it occurred because he began feeling some symptoms that day. Again, the employer's position is unsupported by any authority and is not supported by the record in this case. The record shows that the claimant tried to give his injury time to improve, believing at first that it was a common workplace injury that did not require medical treatment or an accident report; however, when the injury did not improve over the next several days, he decided that he needed to seek medical treatment and reported the accident to the employer. His course of action was reasonable and is not a legitimate basis for the employer's denial of benefits.

¶ 47        The burden of providing a reasonable basis for denial of benefits falls solely on the employer. The record is clear that the employer denied this claim, without any investigation, solely because the claimant did not report the accident on the day it occurred. As the employer has provided no authority for such a denial, it has failed to provide a reasonable basis for that denial. Therefore, we find that the Commission's determination that the employer's refusal to pay benefits was reasonable is against the manifest weight of the evidence. Under section 19(*l*), when the employer's refusal to pay benefits is without good and just cause, penalties are mandatory. Accordingly, we affirm the circuit court's order reversing the Commission's decision and reinstating the arbitrator's decision with respect to penalties under section 19(*l*).

¶ 48        We turn now to the Commission's denial of penalties and attorney fees under sections 19(k) and 16 of the Act. Section 19(k) provides, in pertinent part, that "where there has been any *unreasonable or vexatious delay* of payment *** the Commission *may* award compensation additional to that otherwise payable under this Act equal to 50% of the amount payable at the time of such award." (Emphases added.) 820 ILCS 305/19(k) (West 2010). Section 16 provides for an award of attorney fees and costs when an award of additional compensation under section 19(k) is appropriate. 820 ILCS 305/16 (West 2010). The amount of attorney fees to be awarded is a matter within the discretion of the Commission. *Jacobo*, 2011 IL App (3d) 100807WC, ¶ 22, 959 N.E.2d 772.

¶ 49 The standard for awarding penalties and attorney fees under sections 19(k) and 16 is higher than the standard for awarding penalties under section 19(*l*) because sections 19(k) and 16 require more than an "unreasonable delay" in payment of benefits. *McMahan*, 183 Ill. 2d at 514-15, 702 N.E.2d at 552. For the award of penalties and attorney fees under sections 19(k) and 16, it is not enough for the claimant to show that the employer simply failed, neglected, or refused to make payment or unreasonably delayed payment without good and just cause. *Id.* at 515, 702 N.E.2d at 552. Instead, penalties and attorney fees under sections 19(k) and 16 are "intended to address situations where there is not only a delay, but the delay is deliberate or the result of bad faith or improper purpose." *Id.* at 515, 702 N.E.2d at 553. In addition, while section 19(*l*) penalties are mandatory, the imposition of penalties and attorney fees under sections 19(k) and 16 is discretionary. *Id.*

¶ 50 Accordingly, our review of the Commission's decision to deny section 19(k) penalties and section 16 attorney fees differs from our analysis of the Commission's decision to deny section 19(*l*) penalties. A review of the Commission's decision to deny section 19(k) penalties and section 16 attorney fees involves a two-part analysis. *Id.* at 516, 702 N.E.2d at 553. First, we must determine whether the Commission's finding that the facts do not justify section 19(k) penalties and section 16 attorney fees is against the manifest weight of the evidence. *Id.* Second, we must determine whether the Commission abused its discretion in refusing to award such penalties and attorney fees under the facts in the present case. *Id.* An abuse of discretion occurs when the Commission's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the Commission. *Blum v. Koster*, 235 Ill. 2d 21, 36, 919 N.E.2d 333, 342 (2009).

¶ 51 We agree with the circuit court's conclusion that section 19(k) penalties and section 16 attorney fees should have been awarded in this case. The employer's conduct was not the result of simple inadvertence or neglect. More was involved than just a lack of good and just cause. The employer made a deliberate decision not to honor its statutory obligations to the claimant, and it did so simply because the claimant did not report the accident on the day it occurred. Based on the testimony of the employer's only witness in this case, the claimant's supervisor, the employer's refusal to pay benefits in this case was apparently the product of its established policy that if an accident is not reported on the day it occurs, it cannot be reported at all, and no benefits will be paid. This policy contravenes section 6 of the Act, which allows an employee 45 days to report an accident. See 820 ILCS 305/6(c) (West 2010). Under these circumstances, the Commission's determination that the facts do not support section 19(k) penalties and section 16 attorney fees is against the manifest weight of the evidence. We further hold that, under the facts of this case, the Commission's refusal to award such penalties and attorney fees was an abuse of discretion.

¶ 52                                              CONCLUSION

¶ 53 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County, which reversed the Commission's decision and reinstated the arbitrator's decision with respect to penalties and attorney fees.

¶ 54 Affirmed.