2020 IL App (1st) 192455WC-U
No. 1-19-2455WC
Order filed October 23, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

WORKERS' COMPENSATION COMMISSION DIVISION

| | | |
|---|---|---|
| NORMA BAKER, as widow of RONALD BAKER, | ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 19-L-50048 |
| | ) | |
| THE ILLINOIS WORKERS' COMPENSATION COMMISSION, | ) | |
| | ) | Honorable |
| (Chicago Park District, Defendant-Appellee). | ) | Daniel P. Duffy, |
| | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Presiding Justice Holdridge and Justices Hoffman, Cavanagh, and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The Illinois Workers' Compensation Commission's decision to deny claimant's request for penalties pursuant to section 19(k) of the Workers' Compensation Act (820 ILCS 305/19(k) (West 2016)) and attorney fees pursuant to section 16 of the Workers' Compensation Act (820 ILCS 305/16 (West 2016)) was not against the manifest weight of the evidence or an abuse of discretion.

¶ 2      Claimant, Norma Baker, as widow of Ronald Baker (decedent), appeals from an order of the circuit court of Cook County confirming a decision of the Illinois Workers' Compensation Commission (Commission) denying her requests for penalties against respondent, the Chicago Park District, pursuant to section 19(k) of the Workers' Compensation Act (Act) (820 ILCS 305/19(k) (West 2018)) and for attorney fees pursuant to section 16 of the Act (820 ILCS 305/16 (West 2018)). We affirm.

¶ 3                                    I.  BACKGROUND

¶ 4      Decedent was employed by respondent as a stationary engineer for 27 years. In this position, decedent was responsible for maintaining respondent's pools, fountains, and spray displays. On December 28, 2001, decedent filed an application for adjustment of claim alleging that he sustained a work-related accident on May 30, 2001, while working for respondent. On April 16, 2007, Arbitrator Maureen Pulia found that decedent was permanently and totally disabled as a result of an occupational disease that arose out of and in the course of his employment with respondent. Specifically, Arbitrator Pulia found that due to repeated exposure to chlorine and sodium bisulfate, two chemicals used to maintain respondent's pools, decedent suffered impaired lung function that precluded him from working as a stationary engineer. Decedent's impaired lung function included both restrictive airway disease (RAD) and chronic obstructive pulmonary disease (COPD). Among other things, Arbitrator Pulia awarded decedent temporary total disability benefits of $725.51 per week for 247-5/7 weeks (820 ILCS 305/8(b) (West 2006)), permanent total disability benefits of $725.51 per week for life (820 ILCS 305/8(f) (West 2006)), and reasonable and necessary medical expenses (820 ILCS 305/8(a) (West 2006)). On March 11, 2008, the Commission, with minor corrections, affirmed and adopted the decision of the arbitrator. On April

29, 2009, the circuit court of Cook County confirmed the decision of the Commission. Neither party sought review of the circuit court's decision.

¶ 5    Decedent passed away on May 26, 2013. The medical certificate of death was signed by Dr. Adam Milik. Part I of the death certificate listed the immediate cause of death as coronary artery disease "due to (or as a consequence of)" cor pulmonale "due to (or as a consequence of)" HLP. Part II of the death certificate listed "DHTZ, COPD, HTN, OBESITY, CKD ST, [and] GOUT" as "significant conditions contributing to death but not resulting in the underlying cause given in PART I."

¶ 6    On or about June 7, 2013, claimant, decedent's surviving spouse, filed an application for adjustment of claim with the Commission, seeking death benefits pursuant to section 7 of the Act (820 ILCS 305/7 (West 2012)). Respondent denied responsibility for death benefits, claiming that decedent's death was unrelated to his RAD or COPD. The matter proceeded to a hearing before Arbitrator Kurt Carlson on March 14, 2017, and June 7, 2017. The issues in dispute at the hearing centered on whether decedent's death was causally connected to his work-related illness. In addition, claimant requested penalties pursuant to sections 19(k) and 19(l) of the Act (820 ILCS 305/19(k), 19(l) (West 2016)) and attorney fees pursuant to section 16 of the Act (820 ILCS 305/16 (West 2016)).

¶ 7    At the arbitration hearing, claimant verified that decedent passed away on May 26, 2013, and related that she incurred funeral expenses in the amount of $8623.58. Claimant testified that, following decedent's death, respondent ceased paying permanent total disability benefits. She acknowledged, however, that she periodically received advances from respondent because of

continuances to her case. These advances totaled $22,255.10.[1] Following her testimony, claimant submitted numerous exhibits, including some of decedent's medical records.

¶ 8    At respondent's request, Dr. Dan J. Fintel, reviewed decedent's case and prepared a report of his findings. Dr. Fintel's report, dated November 11, 2015, was admitted into evidence at the arbitration hearing. In the report, Dr. Fintel noted that although "[d]etailed hospital records immediately prior to death were not available," claimant's past medical history was significant for various illnesses, including COPD, cor pulmonale, heart failure with preserved ejection fraction, mild-moderate aortic stenosis, pulmonary hypertension, obesity, diabetes mellitus, hypertension, hyperlipidemia, chronic renal insufficiency, peripheral vascular disease, gout, and anemia. His report also documented decedent as having had a smoking history of two packs of cigarettes per day for forty years. Dr. Fintel concluded that, given decedent's medical history, the most likely causes of death were "right ventricular failure and heart failure with preserved ejection fraction with ventricular arrhythmia or myocardial ischemia." Dr. Fintel opined that these medical conditions were not related to or caused by decedent's employment.

¶ 9    Respondent also presented the evidence deposition of Dr. Fintel, which was taken on May 1, 2017. Dr. Fintel is board certified in internal medicine, cardiovascular diseases, critical care medicine, and nuclear cardiology. He is also a professor at the Feinberg School of Medicine at Northwestern University. Dr. Fintel testified that he had the opportunity to review the medical records that respondent's counsel "shared" with him. He explained, "You [respondent's counsel]

---

[1] Claimant received an additional advance of $20,000 after the arbitration hearing was continued from March 14, 2017, to June 7, 2017, thereby resulting in advances totaling $42,255.10.

had indicated that that was some component of a much larger medical file, and I was relieved, because I wouldn't have had the time to read 18,000 pages."

¶ 10 Dr. Fintel testified that decedent had "a long history of smoking, at least 40 years of smoking *** up to two packs per day" and that he was "quite obese, over 300 pounds for the last decade of his life." Dr. Fintel further testified that decedent had various "active medical problems." In 2008, decedent had two stents implanted into his left anterior descending artery. Decedent developed concentric left ventricular hypertrophy, or thickening of the left heart muscle. Dr. Fintel explained that as the heart becomes thicker, it "relaxes poorly," resulting in diastolic heart failure. This, in turn, leads to "stiffness, higher pressures behind the heart, which are reflected back into the lungs." Dr. Fintel testified that decedent also suffered from cor pulmonale, a condition which results from the elevation of right-sided pulmonary pressures and led to right heart failure in decedent. Other contributing causes to decedent's right heart failure included (1) hypoxemia, *i.e.*, low oxygen levels, "which were the a direct result of his chronic obstructive pulmonary disease, which was caused by his many, many years of smoking" and (2) the backward failure of his left ventricle.

¶ 11 Dr. Fintel testified that decedent died from coronary artery disease, which he stated was "highly likely in the setting of [decedent's] multiple risk factors," including diabetes and his continued smoking. Dr. Fintel also cited a right ventricular arrhythmic event as a consequence of his cor pulmonale. Dr. Fintel testified that, in his opinion, decedent's work activities did not cause or contribute to his death. Asked whether he believed decedent's COPD played a role in decedent's death, Dr. Fintel responded:

"I think the chronic obstructive lung disease caused primarily by the years of cigarette smoking and lung damage, with progressive lung damage, particularly at the very end of his life, was an important cause of his right ventricular failure, and the fluid overload, the hypoxemia that he had at the end of his life requiring oxygen therapy, and not work-related exposure."

¶ 12    On cross-examination, Dr. Fintel testified that decedent's heart and lung conditions were "very tightly intertwined." He explained that chronic left ventricular diastolic heart failure increases pressure in the pulmonary arteries and that increase in pressure causes pulmonary hypertension. In turn, pulmonary hypertension causes right ventricular failure. Dr. Fintel testified that in decedent's case, both left ventricular diastolic failure and "chronic smoking" contributed to the right ventricular failure. He also testified that decedent's cor pulmonale was caused by both restrictive and obstructive pulmonary disease and that decedent's "lack of lung function" contributed to his ultimate death.

¶ 13    Dr. Fintel acknowledged that if there was "relevant material" that was not provided to him, it could change his opinion. Dr. Fintel testified that in lieu of sending him 18,000 pages of decedent's medical records, respondent's attorney provided him with "a roughly 250-page document, which contained a record of multiple visits with caregivers between 2008 and 2013 when [decedent] died" and a "fairly detailed 15-page single-spaced summary of the medical history." Dr. Fintel stated that the 15-page summary "was factually accurate," consisting of "the diagnoses that came directly from the doctors' notes." Dr. Fintel testified that he was not provided with materials from Christ Hospital from 1997, the University of Chicago from 2001, Dr. Catherine Burke (a cardiologist), a Dr. Lin (an electrophysiologist), a Dr. Cress, a Dr. Leef (a

pulmonologist), a Dr. Cohen (a cardiologist), a Dr. Schwartz, a Dr. Reiter, a Dr. Razma, Dr. David Cugel (a pulmonologist), a Dr. J.R. Sethna, or Dr. William McCarthy (a vascular physician). In addition, he did not have any of the depositions taken in the underlying workers' compensation case, a job description or any testimony concerning decedent's working conditions and exposures, or the Material Safety Data sheets for either chlorine or sodium bisulfate.

¶ 14    Dr. Fintel testified that he learned about decedent's smoking history from a "note" in decedent's chart, although he was unable to recall which note. It was Dr. Fintel's understanding that decedent was still smoking "close to the end of his life." Dr. Fintel testified that respondent's attorney confirmed that, to the best of his knowledge, Dr. Fintel's understanding of decedent's smoking history was factually correct. The following exchange then occurred between claimant's attorney and Dr. Fintel:

"Q Were you aware that [decedent] actually stopped smoking back in 1988?

A No.

Q All right. And in 1988 that would have put him at age 46. You don't think he started smoking when he was 6, do you?

A No. Although some people start early, but I don't think that would have been the case. Usually it's the early teens to mid teens.

Q Would that change your opinions in this matter?

A It would not change the overall causation opinion of the cor pulmonale and the left ventricular diastolic failure leading to an arrythmia and death, but it would at least remove the ongoing effect of smoking as a worsening factor for his lungs, if indeed he had stopped smoking in 1988, which would be *** 25 years before his demise.

Q All right. Would it change your opinion with regard to the cause of the COPD?

A It would suggest that his lung function shouldn't have continued to deteriorate if it was just due to smoking, if indeed it was factually true that he had stopped smoking in 1988."

¶ 15 On March 1, 2018, Arbitrator Carlson issued his initial decision. On March 20, 2018, Arbitrator Carlson issued a corrected decision in response to claimant's motion to correct clerical errors in the original decision pursuant to section 19(f) of the Act (820 ILCS 305/19(f) (West 2016)). Arbitrator Carlson found that decedent's death arose out of and in the course of his employment with respondent and that his condition of ill-being was causally connected to the same. In support of his finding, Arbitrator Carlson cited the Commission's findings of fact in the underlying case and the contributing conditions listed in decedent's death certificate. The arbitrator also cited Dr. Fintel's acknowledgement that decedent's COPD was a cause of decedent's right heart failure, that decedent's restrictive and obstructive pulmonary disease contributed to his cor pulmonale, and that decedent's lack of lung function contributed to his ultimate death.

¶ 16 The arbitrator awarded claimant burial expenses in the amount of $8000 (820 ILCS 305/7(f) (West 2016)) and death benefits of $725.51 per week for the remainder of claimant's life (820 ILCS 305/7 (West 2016)), subject to a credit of $42,255.10. Regarding claimant's request for penalties, the arbitrator stated:

"No penalties are awarded in the matter for three reasons. First, the [decedent] died of a cardiac condition or heart attack. It would not be apparent to [an] insurance company adjuster or third-party administrator to immediately pay out on the claim. Second, the death certificate's admissibility into evidence and its competency to establish conclusive proof

of causation was unclear until the time of trial. In fact, it may have only established the 'presumption of causation,' especially when you consider [the] language of [the] death certificate in its entirety. Please consider Part II of the document stating, 'Enter other significant conditions contributing to death *but not resulting in the underlying cause given in PART I.*' One could certainly understand that previous statement to mean [decedent's] COPD did *not* result in the underlying causes of Coronary Artery Disease, Cor Pulmonale or HLP. As a result, the death certificate is somewhat contradictory and admittedly confusing. [Third], it was not a claim warranting the notion of penalties until after Dr. Fintel's deposition on May 1, 2017, which was *after* proofs were opened on this matter (March 17, 2017). The arbitrator notes also this is sixteen years after the original occurrence and four years after the [decedent's] death.

In light of the above, it can be said that Respondent had a good faith basis for denying Petitioner's claim for benefits, at least until immediately after Dr. Fintel's deposition. The Arbitrator will not award penalties under the above circumstances." (Emphases in original.)

¶ 17    Thereafter, claimant and respondent each filed with the Commission a petition for review of the arbitrator's decision. Respondent ultimately satisfied the award and, on September 4, 2018, moved to dismiss its petition for review. The Commission granted respondent's motion on September 17, 2018. Petitioner's petition for review remained pending.

¶ 18    In a decision entered on January 11, 2019, the Commission modified the corrected decision of the arbitrator and awarded claimant penalties pursuant to section 19(l) of the Act (820 ILCS 305/19(l) (West 2016)) in the amount of $10,000. The Commission affirmed and adopted the

remainder of the arbitrator's corrected decision, including his decision not to award penalties pursuant to section 19(k) of the Act (820 ILCS 305/19(k) (West 2012)) or attorney fees pursuant to section 16 of the Act (820 ILCS 305/16 (West 2012)). Regarding the issue of penalties, the Commission found that respondent had a good-faith basis to deny claimant's application for benefits under section 7 of the Act until the parties took the evidence deposition of Dr. Fintel on May 1, 2017. The Commission explained that Dr. Fintel's November 2015 report was premised upon a lengthy history of cigarette smoking. Once confronted with information that decedent ceased smoking in 1988, however, Dr. Fintel retracted his prior statement and opined that decedent's smoking was not a cause of his lung condition. The Commission elaborated:

> "As the issue of causal connection between the Decedent's work duties and his COPD and RAD had been previously determined, and the Decedent's smoking history had been eliminated as a cause in the Decedent's lung disease, the credible evidence established that the Decedent's COPD was a cause in the Decedent's death and his COPD was related to his work duties. Accordingly, the Commission finds that Respondent had no reasonable basis to deny benefits after Dr. Fintel's May 1, 2017 deposition. However, it was not until September 4, 2018 that Respondent advised the Commission that it had paid Arbitrator Carlson's award. Therefore, pursuant to Section 19(l), the Commission is compelled to award $10,000.00 in penalties."

Regarding claimant's request for penalties under section 19(k) of the Act and attorney fees under section 16 of the Act, the Commission determined that while respondent's "notions were misguided," it did not believe that respondent acted vexatiously. The Commission explained that respondent relied upon the opinion of a medical practitioner whose conclusions were flawed

because he was provided incomplete information. The Commission added that respondent "realized the incorrectness of its actions, as it paid the arbitration award and dismissed its Review in this claim." Under these circumstances, the Commission concluded that penalties under section 19(k) of the Act and attorney fees under section 16 of the Act were not warranted.

¶ 19    Claimant sought judicial review of the Commission's decision in the circuit court of Cook County. In an order dated November 20, 2019, the circuit court confirmed the decision of the Commission. This appeal by claimant ensued.

¶ 20                                   II.  ANALYSIS

¶ 21    On appeal, claimant contends that respondent did not have a good-faith basis for the delay in paying benefits. According to claimant, the delay was based solely on Dr. Fintel's testimony. Claimant asserts, however, that any reliance on Dr. Fintel's opinion was improper because respondent "failed to provide relevant medical records and work histories to Dr. Fintel and simply had him review an incorrect medical summary." Claimant further asserts that once Dr. Fintel was provided a "proper history and medical records, he conceded causal connection." Thus, claimant reasons, respondent's delay in payment was not made in good faith and the Commission therefore erred in failing to award penalties pursuant to section 19(k) of the Act (820 ILCS 305/19(k) (West 2016)) and attorney fees pursuant to section 16 of the Act (820 ILCS 305/16 (West 2016)).

¶ 22    Respondent replies that it had a good-faith basis for the delay in payment of benefits, so the Commission correctly determined that claimant was not entitled to penalties under section 19(k) of the Act and attorney fees under section 16 of the Act. In support of its position, respondent relies on the arbitrator's reasoning (adopted by the Commission) and further posits that the medical evidence in this case was complicated and subject to many interpretations. As further evidence of

its good-faith, respondent notes that during the course of this matter, it made payments to claimant against any future award and dismissed its petition for review of the arbitrator's decision.

¶ 23    The intent of sections 16, 19(k), and 19(l) is to implement the Act's purpose to expedite the compensation of industrial workers and to penalize employers who unreasonably, or in bad faith, delay or withhold compensation due an employee. In this case, claimant challenges the Commission's denial of penalties under section 19(k) of the Act and attorney fees under section 16 of the Act.

¶ 24    Section 16 of the Act provides for an award of attorney fees when an award of additional compensation under section 19(k) is appropriate. 820 ILCS 305/16 (West 2012); *Jacobo v. Illinois Workers' Compensation Comm'n*, 2011 IL App (3d) 100807WC, ¶ 22. In turn, section 19(k) of the Act provides:

> "In case[s] where there has been any unreasonable or vexatious delay of payment or intentional underpayment of compensation, or proceedings have been instituted or carried on by the one liable to pay the compensation, which do not present a real controversy, but are merely frivolous or for delay, then the Commission may award compensation additional to that otherwise payable under the Act equal to 50% of the amount payable at the time of such award." 820 ILCS 305/19(k) (West 2012).

Thus, awards under sections 16 and 19(k) are proper only if the employer's delay in making payment is unreasonable or vexatious. *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 504-05 (1998). That is, the refusal to pay must result from bad faith or improper purpose. *McMahan*, 183 Ill. 2d at 515. Accordingly, "an employer's reasonable and good faith challenge to liability ordinarily will not subject it to penalties under the Act." *Matlock v. Industrial Comm'n*, 321 Ill.

App. 3d 167, 173 (2001). Good faith is to be judged objectively, hence the issue is whether an employer's denial was objectively reasonable under the circumstances. *Electro-Motive Division v. Industrial Comm'n*, 250 Ill. App. 3d 432, 436 (1993). The burden is on the employer to demonstrate that its denial of benefits was objectively reasonable. *Electro-Motive Division*, 250 Ill. App. 3d at 436.

¶ 25    Before proceeding further, we note that the parties dispute the appropriate standard of review. Claimant asserts that *de novo* review applies because the facts underlying respondent's delay in paying benefits are undisputed and susceptible to a single inference. According to respondent, whether an employer's conduct justifies the imposition of penalties is a factual inquiry for the Commission and therefore subject to the manifest-weight standard of review. Both parties are incorrect.

¶ 26    The imposition of attorney fees under section 16 and penalties under section 19(k) are discretionary. 820 ILCS 305/16 (West 2016) (providing that the Commission "may" assess attorney fees in certain circumstances); 820 ILCS 305/19(k) (West 2016) (noting that the Commission "may" award additional compensation); *Jacobo*, 2011 IL App (3d) 100807WC, ¶ 24. Hence, our review of the Commission's award of attorney fees and penalties under these statutory provisions involves a two-part analysis. *Jacobo*, 2011 IL App (3d) 100807WC, ¶ 25. First, we must determine whether the Commission's finding that the facts do not justify section 19(k) penalties and section 16 attorney fees is against the manifest weight of the evidence. *Jacobo*, 2011 IL App (3d) 100807WC, ¶ 25. A decision is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent. *Westin Hotel v. Industrial Comm'n*, 372 Ill. App. 3d 527, 539 (2007). Second, we determine whether it would be an abuse of discretion to refuse to award

such penalties and fees under the facts presented. *Jacobo*, 2011 IL App (3d) 100807WC, ¶ 25. An abuse of discretion occurs when the Commission's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the Commission. *Oliver v. Illinois Workers' Compensation Comm'n*, 2015 IL App (1st) 143836WC, ¶ 50.

¶ 27    In the present case, the Commission concluded that respondent had a good-faith basis for the denial of benefits. In support of this finding, the Commission relied on the reasons cited by the arbitrator, notably the arbitrator's findings that decedent died from a cardiac condition and a genuine question existed as to the cause of decedent's death given the confusing nature of the death certificate. The Commission acknowledged that respondent relied upon the opinion of Dr. Fintel, a medical practitioner whose conclusions were flawed because he was provided incomplete information. The Commission observed, however, that once respondent realized the incorrectness of its actions, it paid the arbitration award and moved to dismiss its petition for review of the arbitrator's decision. Accordingly, the Commission concluded that respondent did not act vexatiously and it denied claimant's request for section 19(k) penalties and section 16 attorney fees. For the reasons set forth below, we cannot say that the Commission's factual findings are against the manifest weight of the evidence or that it was an abuse of discretion to refuse to award such penalties and fees under the facts presented.

¶ 28    As noted, in finding that respondent did not act vexatiously in delaying payment of benefits to claimant, the Commission relied on the arbitrator's findings that decedent died from a cardiac condition (not lung impairment) and a genuine question existed as to the cause of decedent's death given the confusing nature of the death certificate. The record supports these findings. The cause-of-death section of decedent's death certificate consisted of two parts. Part I listed the *immediate*

*cause* of death as coronary artery disease "due to (or as a consequence of)" cor pulmonale "due to (or as a consequence of)" and HLP. Notably, Part I did not reference RAD, COPD, or any other lung impairment. Part II listed the "significant conditions contributing to death but not resulting in the underlying cause[s] given in PART I." Among the conditions listed in Part II was COPD. However, as the Commission recognized, the death certificate is confusing as it suggests that decedent's COPD did *not* result in the immediate cause of death listed in Part I. Moreover, in his report and on direct examination at his deposition, Dr. Fintel agreed that decedent died from coronary artery disease. Further, Dr. Fintel attributed decedent's death not to his work activities, but to his "multiple risk factors," including diabetes and smoking. Dr. Fintel further opined that claimant's COPD was primarily caused by decedent's "years of cigarette smoking *** particularly at the very end of his life" and not any work-related exposures.

¶ 29    It is true, as claimant emphasizes, that when Dr. Fintel was informed at his deposition on May 1, 2017, that decedent quit smoking in 1988, he retracted his statements and opined that decedent's smoking was not a cause of his lung impairment. Claimant insists that because respondent provided Dr. Fintel with incorrect information regarding decedent's smoking history, the imposition of section 19(k) penalties and section 16 attorney fees is warranted. However, the Commission decided otherwise, concluding that respondent had not acted vexatiously, especially given that respondent realized the incorrectness of its actions, paid the arbitration award, and dismissed its review claim. We also observe that there was no indication in the record that respondent's decision to provide Dr. Fintel with only 250 pages of decedent's medical records and a 15-page summary was motivated by any reason other than to save Dr. Fintel time. As Dr. Fintel himself testified at the arbitration hearing, he was relieved that only "some component" of the

medical file was provided as he would not have had the time to read 18,000 pages. Additionally, the fact that respondent provided claimant advances during the pendency of these proceedings suggests that it was not acting in bad faith or for improper purpose. In short, based on our review of the record, we cannot say that the Commission's factual findings are against the manifest weight of the evidence or that, under the facts presented, it was an abuse of discretion to deny section 19(k) penalties and section 16 attorney fees in this case.

¶ 30                                    III. CONCLUSION

¶ 31    For the reasons set forth above, we affirm the judgment of the circuit court of Cook County, which confirmed the decision of the Commission to deny claimant's request for penalties pursuant to section 19(k) of the Act and attorney fees pursuant to section 16 of the Act.

¶ 32    Affirmed.